Mr. Schular has prior convictions for drug offenses lacking the mens rea element necessary to distinguish between blameworthy and otherwise innocent conduct. In 1986, one state, North Dakota, had dispensed with the element of guilty knowledge for its drug trafficking crimes. Today, Florida is the only state lacking a guilty knowledge element. Florida's law is an aberration. The question here is whether Congress intended convictions under such an aberrational law to support the extreme sentencing enhancement of up to life in prison under ACCA. The answer is no for a variety of reasons. First, the state offense provision presents a list of generic crimes which all include a mens rea element. Second, the text of the state offense provision itself implies a mens rea element irrespective of any generic offense analysis. Third, Congress described the qualifying state offenses by tracking almost verbatim the language of the federal drug trafficking statute. Congress used the same terms and even in the same order as the federal statute. We know that when Congress transplants language from one legal source to another, the language carries the old soil with it. And here, the old soil includes a mens rea element. While tracking the federal statute, Congress used the term involving to sweep in similar crimes described with different terminology such as promoting, producing, or furnishing a controlled substance. And Florida uses the term sale, which we agree comes under the umbrella of the term, the federal term distribution. Finally, since Congress legislates against the background of the common law, even in the sentencing context, the requirement for prior conviction for felony offenses itself carries a presumption of mens rea for all the serious drug offenses, federal and state, and shows, moreover, that the State predicate provision is offense-driven and not based upon discrete conduct or activities. That's a summary of our argument, but I can be more specific. Here we have a phrase, manufacturing distribution, possession with intent to manufacture or distribute a controlled substance. This phrase incorporates well-known drug trafficking crimes under the Federal Code and virtually identical language is used to describe the drug trafficking crimes under the Uniform Controlled Substances Act. In 1986, Congress knew that every State had adopted the Uniform Act to a substantial degree. It's only natural, therefore, that Congress would use this same language to identify drug trafficking offenses and not discrete conduct or activities under the State offense provision. The difference between the Florida statute and the Federal statute, as I understand it, is the following, but you'll correct me if I'm wrong. Under the Federal statute, the prosecution has to prove that the defendant knew that the substance in question was a controlled substance, whereas under Florida, that is an affirmative defense. So if the defendant raises the affirmative defense, then the State has to prove beyond a reasonable doubt that the defendant knew it was a controlled substance. Is that the substance of the difference between the two? Well, I think that's a correct conclusion based upon a Florida jury instruction. However, even in Florida, even if a defendant were to raise that affirmative defense, a verdict of guilty would never, under any circumstance, incorporate a specific finding that the defendant had guilty knowledge because the Florida law also places upon the defendant a burden of production of evidence. Right. But if the affirmative defense is raised, then the situation is the same as it is under Federal law. It has to be proven beyond a reasonable doubt. That is a reasonable assumption, but the Florida Supreme Court has never actually ruled which party has the burden of ultimate burden of proof. But in any event, I think it was an exaggeration to call this a strict liability crime. It may be an exaggeration. It depends on how one defines a strict liability crime. If one says the elements of the offense do not include a mens rea element, then it's a strict liability crime. But many people think if an absence of guilty knowledge is not a defense, that's a strict liability crime. So there's a difference. Well, there's a mens rea. You repeatedly say in your brief that there's no mens rea for the Florida offense. There is a mens rea. It's not the mens rea you would like, but there is a mens rea, is there not? You must intend to do the act, right? Yes, but the Florida decisions are clear that the intent of doing the act is they do not consider that a mens rea. It's only if one knows that the substance that is delivered is a controlled substance that that qualifies as a mens rea of guilty knowledge. What about knowing what you're selling? In other words, doesn't the State have to prove that it was cocaine that was being sold, not sugar? No, Your Honor. The Florida law is so broad that even the defendant who does not know the substance that was delivered or sold is still guilty. For example. If he has no idea that it's cocaine, he thinks it's an innocuous substance, the prosecution doesn't have to show that, you say? That's correct, Your Honor. Can I go back to? The one thing that's odd about this case, you're claiming the interest of uniformity is served by your approach, and yet in every other State, someone who did exactly what this defendant did would not escape from under ACCA. So he gets to avoid ACCA, although he is similarly situated to people in every other State who couldn't. Your Honor, it depends on how you define the term conduct. When I think of conduct, I think of criminal conduct. I think the elements of the crime. If the elements of crime include a mens rea element of guilty knowledge, then the person convicted under the Florida law does not have that element, is not found to have acted with guilty knowledge. I'm talking about the actuality of the situation. People in other States who did exactly what this defendant did would get the ACCA in answer. But the Florida statute does not involve the same conduct because the Florida con the conduct in the Florida statute does not include a guilty knowledge. So the defendants in Georgia and Florida are not similarly situated and not convicted of the same conduct. In these cases where your client was previously convicted of a Florida drug offense, did he go to trial or did he plead guilty? No, he pled guilty, Your Honor. All right. So in all those cases, he pled guilty. He could have raised an affirmative defense. I didn't know what this was. I didn't know that it was cocaine. But he didn't do that. No, he didn't. But as far as the categorical approach is concerned, it is not universal in the Florida law that convictions require a finding of guilty knowledge. I look forward to every new ACCA case because the distance between the law and the reality gets bigger and bigger. So here we have somebody who has, what, six prior convictions of either distribution or possession with intent to distribute. Yes, Your Honor. And I'm saying this is a he's in a strange situation because he keeps selling a substance which he thinks is legal and cheap. And darn it, every single time it turns out actually to be something that is expensive and illegal. He just keeps how does this happen to him? I don't know how it happens to him, but, Your Honor, I'm not trying to convince the Court that Mr. Shuler himself acted without guilty knowledge. I'm trying to convince the Court that as a matter of law, he was not found to have acted with guilty knowledge. And the Court cannot presume, however common sense it may be, to assume that he acted with guilty knowledge, because the question whether a defendant acts with guilty knowledge is a question of fact, and that has to be determined in a Florida court, and it cannot be determined by a Federal sentencing judge in a collateral sentencing proceeding. Sotomayor, could you clarify two things for me? Part of what Justice Alito said. I must say I didn't focus in on this. The affirmative defense in the Florida jury instructions, the prosecutor bears the burden of proving knowledge if the affirmative defense is raised? Is that what you're at? I assumed if it was an affirmative defense that the defendant had to prove the element. Your Honor, there are two points in the Florida jury instructions. The first point cast on the defendant, a burden of production of evidence. Then there's a jury instruction that the burden of proof falls on the State. However, the point I was trying to make is that the Florida Supreme Court has never actually ruled where the burden of ultimate proof would fall. All right. Now, Justice Ginsburg said that there was a knowledge element. I understood there was a knowledge element just with respect to possession with intent to distribute, correct? That's correct. The knowledge element with respect to possession offenses, of which Mr. Shuler has only one, is knowledge of the presence of the substance. But in the Florida jurisprudence, under the Chacon case, the knowledge of the presence is actually not – it is a state of mind element, but not regarded as a guilty state of mind, because the knowledge of the presence is something akin to what your mailman has when he delivers a package to your door. I'm getting now a little confused. As I understood it, your knowledge element goes, according to the Florida courts, goes to possession with intent to distribute. They've explicitly said you need knowledge that the substance was cocaine, correct? Not under the present law, Your Honor. Ah, okay. So you don't need knowledge with manufacturing or sale. You don't need knowledge that the substance is a controlled substance with any offense under the Florida law. But does the government have to prove that the substance that you actually manufactured or you actually sold was, in fact, cocaine? Yeah, they would have to prove that. All right. So at least that would be. What's missing is that the defendant knew that this was. Exactly, Your Honor. Mr. Zuma – I'm sorry. No. Thank you. Can we go back to the language of the statute? And I'm hoping you can explain to me where exactly you see this knowing requirement coming from. As I understand the Solicitor General's position, he says, yes, this is a categorical approach, but, you know, the language of the statute just says an offense involving manufacturing, distributing, or possessing with intent. And the word knowing is not there. So, you know, the Florida statute, I think the Solicitor General would say, is a State law that involves manufacturing, distributing, or possessing with intent. What's the problem there? The implication of the mens rea element comes from two sources. One is the language, the preparatory language preceding the term involving. And the second is for the language that follows involving. When Congress said we want prior convictions for felony offenses, I think that itself incorporates an expectation that felony offenses incorporate a mens rea element generally. And after the word involving, Congress used the language that is parallel to the Federal statute and the Uniform Control Substance Act. But what the Federal statute specifically says, knowingly manufacture. And this State provision does not, but that's priceless. Kagan. Well, not only the State provision does not, but this provision saying what the term serious drug offense means does not. It takes out the word knowing. That's exactly the situation where the presumption of mens rea applies. And I understand your concern that the omission of the mens rea, an expressed mens rea element in one part of the statute must apply something different. Now, if I may refer to that as the Rosillo rule, I would say that the Rosillo rule does not apply with the full force and effect that it does, generally, because it's a very general statute that could apply to criminal law, civil law, could apply to any word, could apply to any phrase in a statute. But the presumption of mens rea is a much more specific rule, and where the omission is specifically of mens rea, that is a specific rule that applies in this context. And if the specific controls the general in the law, then this rule, the presumption of mens rea, supersedes the Rosillo rule. Counsel, I think we'd all agree with you that normally in a criminal provision, mens rea would be something we would take very seriously. But here, and I think Justice Kagan is getting at it, we have kind of two strikes against you. One is that the Federal statute that you say this language parallels expressly includes the word knowing. It's not here, strike one. And strike two is there's the word intent with respect to manufacturing or distributing in the next clause. So in the very next clause, you do have a mens rea, strike two. So what do we do about that? Well, Your Honor, let me refer to strike two first. If the government's position were adopted, that intent element that you refer to would be stricken entirely from the statute, because the government talks about approval of the white case from the Eleventh Circuit. I'm not sure I follow that, because it seems to me that language would capture inchoate offenses, right, things that aren't completed, crimes that involve an intent to do these things, but not necessarily completion of them. I agree that the term involving may be broad enough to incorporate inchoate offenses that because that's a part of the Federal drug trafficking crimes which qualify, correct. But the government says a trafficking statute that criminalized trafficking by possession of a specific quantity of drugs would qualify here because that necessarily entails an intent, but my friend from the government is writing the intent requirement right out of the statute because it's a plain text requirement and it should be found by a jury, not by the judge in a Federal sentencing proceeding. Let me try it one more time. I think the Solicitor General would say that he has to show either a State law involving manufacturing or distribution or a crime involving possession with the intent to do those other things, manufacturing, distribution, whether or not they actually complete the manufacturing or distribution. So those two clauses would do independent work, and the first one, notably, doesn't contain any mens rea while the second one does. But the my friend's argument would also be so broad and indeterminate that it would sweep in convictions for purchases of relatively minor amounts of drugs, personal use quantities. And my friend would be arguing that on the theory that a purchase of a minor quantity of drugs necessarily entails a distribution from the seller to the buyer. But didn't Congress get at that by the 10 years of imprisonment minimum so that would weed out minor State offenses? No, Your Honor. The specific example here is Florida because even the purchase of a personal use quantity of drugs is punishable as a second-degree felony by up to 15 years in prison. And I think it's probably true in a number of States as well. And more broadly on your mens rea argument, which I think would have great force if we were a Florida court interpreting the Florida statute, and should we interpret the Florida statute to require a particular mens rea, but that's not what this statute is. It's a recidivist statute in trying to prevent the possession of firearms by people who have prior violent offenses or drug offenses. And Congress, because of the violence caused by people who have firearms and prior histories, wanted to really cast a broad net with what prior offenses would be captured and would trigger a duty on that person, don't possess firearms. So they used the word involving. So does Congress's – what's your response to Congress's objective, which is reflected in the language, to cast a broad net of what offenses might trigger this duty not to possess firearms? My response is that including offenses such as prescribed by Florida is not consistent with the purpose of the statute. I think you expressed the purpose of the statute quite well, to capture the worst of all, that it would capture, in the least culpable conduct, captures persons such as a truck driver who's hired to deliver a driver's shipment from point A to point B. And so the truck driver knows nothing about what is in the shipment. All he knows is his job is to take it from point A to point B. Breyer, that person, I gather, under Florida law, that that person would say he has the right to say, judge, I didn't know what was in the truck. And then the government has to prove he did know. Okay? So I guess the question for us is this. It seems much simpler. I don't know. I may be missing something. But go look further down the statute. One of the things that comes under violent felony, it says, is burglary. So they have a conviction for something. And if it is burglary, now, every state has all kinds of statutes, you know. So what you have to decide is this particular conviction fall within the terms burglary. It has to be burglary. So obviously, you have to have a pretty good definition of what counts as burglary for Federal purposes when it was the State that convicted him of State burglary. But it doesn't say that in this part. It doesn't say is manufacturing distributing. It says involves manufacturing or distributing, which is much vaguer. So if, in fact, Florida law is not quite, you have to know, the intent, it is that the burden falls on the defendant to say, I didn't know what was in the truck. And then the government has to prove it. Is that different enough from ordinary drug possession as it's used across the country so that it doesn't involve drug manufacturing selling? Now, I have to admit, it sounds as if it does involve it. But you have a few examples there that really push me. And that's true. But isn't that the issue? Your Honor, I have two responses. One is that the affirmative defense doesn't offer what it seems to offer, because in the examples that I've got. But have I got the issue right? Yes, Your Honor. And the examples that I'm familiar with, the threat or the coercion of criminal prosecution is so great that the defendant, who is actually innocent, may bargain away his affirmative defense for a lesser sentence and actually plead guilty. The second comment I have is that the distinction between is and involving is highly overrated, because the term is was not the driver of the generic offense analysis, and so it cannot be viewed as a prerequisite to the generic offense analysis. The driver was the term burglary. The Court found that burglary was ambiguous, not knowing whether it referred to the common law definition or the definition of burglary as it appeared throughout the States generally, and Congress settled on the generic definition in order to further the interest in uniformity of sentencing for the same conduct throughout the States. That same interest in the uniformity of sentencing for the same conduct throughout the States weighs in favor of construing the State provisions similar to the Federal provisions. And in your truck example, again, I think if you're in Florida court, that's a great argument. Construe this narrowly. Don't construe it broadly. This is unfair. This is a due process kind of problem, more set kind of problem. But once you have the conviction and you have two other convictions, you have three convictions, then you know, if you read Federal law, I shouldn't possess firearms or I'm going to be subject to a severe mandatory minimum. Aren't you on — I guess the point is, aren't you on fair notice when you have those convictions, even if you think those convictions are unfair, that you shouldn't possess firearms? But I think we agree here that the point that we're trying to decide here is whether Congress intended this type of crime to qualify. And there's very little reason to suggest Congress did so, one, because it's such an aberrational law, and two, because the symmetry between the Federal and State provisions provides very little deference to the States. In other words, there are three points. One, it starts out by the terms manufacturing, distribution, et cetera, which seems to parallel the Federal statute. Two, it says the definition of controlled substance has to be in conformity with Federal law, not State law. And three, it says that the length of the sentences must satisfy Congress's demand to be more than 10 — punishable by more than 10 years. So the overall symmetry between the Federal and the State offenses affords very little — almost none, I would say — discretion to idiosyncratic rules of State law. Thank you, counsel. Thank you. Mr. Bond. Mr. Chief Justice, and may it please the Court. Section 924E2A2 prescribes a categorical approach to determine whether a State drug offense qualifies as an act of predicate. But unlike another nearby ACCA provision, Clause B2, which uses is, Clause A2 does not call for the generic analog inquiry that Petitioner advocates. That follows from the statutory text, specifically the use of the word involving, followed by a series of everyday action words, not legal terms of art that denote complete crimes. That is also fully consistent with this Court's precedent. Petitioner's contrary approach would require courts to construct a complete generic version of each offense based on a 50-State survey of laws from three decades ago, and then compare that generic analog to a particular State's offense at a particular moment in time to see if they match in every respect. That approach has proven challenging enough for the enumerated offenses in B2, like burglary, which were well established and relatively consistent in 1986. It would be even more challenging for State drug trafficking crimes, which in 1986 were comparatively new and varied in multiple material ways, and it would increase the risk of arbitrary sentencing disparities arising from variation in ancillary aspects of State law, like which side bore the burden of persuasion on the knowledge of the illicit nature of the substance. In Clause A2, Congress chose a much simpler approach that asked just two questions. Did the State offense involve one of these activities and, for possession, a specified intent? And did it carry a maximum sentence of at least 10 years? And that mirrors the Federal provision in A1. Under that straightforward approach, Petitioner's convictions clearly qualify. And that approach cuts through the variation and uncertainty in State law, like the questions that have arisen this morning about Florida law, and instead uses a broad range of conduct plus this 10-year maximum penalty threshold to filter out and screen out low-level State offenses. And it avoided freezing in place the particular variance of State crimes that happened to predominate in 1986. Ginsburg. We're told that under Florida law, you could have a pretty low-level offense. We just heard that. And have a 15-year maximum. It's true that there are substantial sentences, although, as the colloquy pointed out, as we explain in our brief, under Florida law, knowledge of the illicit nature or lack of such knowledge is an affirmative defense. So for an element that's not specified in the statute, in the Federal statute at all, it seems particularly unlikely that Congress meant the burden of or the allocation of the burden of proof on that element to drive the ACCA analysis. What is the ---- Ginsburg. In Federal prosecutions, how does it work? How is this element ---- how does the prosecutor prove the defendant knew that the substance was illegal? So under the Federal Controlled Substances Act, which expressly requires a knowing mens rea, as this Court explained in McFadden, that extends to the substance itself. The defendant must either know what the substance is or know that it's a controlled substance. But as McFadden pointed out, that knowledge can be shown by the fact of a prior arrest for possessing or selling that substance. It's very unlikely that in a recidivist statute like this, where Congress is only imposing this enhancement for those who have multiple past convictions, that Congress was worried about the unlikely scenario where a person repeatedly sells an illicit substance, believing it to be innocent or believing it not to be a controlled substance. We think that's just not a plausible understanding of what Congress was getting at here. So we think that for all the reasons we've explained in our brief, you should not adopt the generic analog inquiry. And the alternative fallback argument Petitioner is offering today that focuses on reading in mens rea, we think, fails for several independent reasons. Alitoson Well, isn't the answer to Justice Ginsburg's question that under the Federal scheme, the knowledge of the illegal nature of the substance is almost always inferred from the defendant's conduct? It's not based on – it's not generally based on direct evidence. Isn't that right? Rienzi Yes, that's right. And under Florida law, it works similarly, that if you possess one of these controlled substances, Florida law, and this is section 893.101c, allows a permissive presumption that you knew what it was you were selling, and that can be rebutted by the defendant. So in the scenario where a defendant says, I didn't realize that this was cocaine, I thought it was powdered sugar or some noncontrolled substance, the defendant can bring that in. Now, we're not aware of a large number of cases that fall in this delta. It does not seem like it's a particularly significant thing in Florida prosecutions. But in all events, it seems quite unlikely that Congress intended the application of this recidivist enhancement to turns on those kinds of vagaries of State law. Now, with respect to the mens rea requirement – Alito I assume are there a lot of cases in which a defendant is acquitted based on lack of knowledge of the illegal nature of the substance involved without actually testifying, I didn't know that it was an illegal substance. Rienzi I'm not aware of statistics on that. It wouldn't at all surprise me if that's correct, but I don't have statistics on the frequency with which that occurs. Turning to whether to read in a mens rea requirement into A2, I think there are three fundamental problems with Petitioner's argument here. First, the ordinary meaning of the words, which this Court in ACCA cases as elsewhere has looked to, does not include an intent requirement, certainly not intent with or knowledge with respect to the illicit nature of the substances. The Petitioner urges you to look to the ordinary meaning of manufacture and distribute in his reply brief, and the ordinary meaning of those words does not pick up knowledge that the thing you're making or selling is illegal. I think his argument really rests on this idea that these are somehow terms of art or were in 1986, and that argument doesn't hold water either. The Federal statute, as has been discussed, expressly imposed that knowing or intentional requirement in addition to using these words. That's not only in the Controlled Substances Act, but in the other statutes cross-referenced in Clause A2, the Import-Export Act and the Maritime Statute. All of them expressly imposed this additional mens rea requirement. At the State level, there was variation. Roughly two-thirds of the States followed what was then the Uniform Act's approach of not expressly requiring mens rea, while the other third followed Federal law and did expressly include it. Now, Congress is looking out at the landscape of State law in 1986. I think it would be hard to infer that Congress, by using this series of words, thought it was picking up a mens rea that some States in Federal law imposed expressly, other States in a number of circumstances had read in based on background principles of State law, but where the words themselves don't carry that particular meaning. And in addition, States did not all use the same terms, although a number, roughly three-fifths, used the terms that follow the Federal Act. A number used a variety of different verbs to pick up conduct in addition to these or in replacement of these, like give away, transport, peddle, offer, traffic, negotiate and barter, and the list goes on. The point is, States were not using these as terms of art when they were using different terms. Sotomayor, do you think Congress intended to criminalize a mailman's delivery or postal service delivery? Sotomayor, I doubt it, but what you're saying is that, and there is a disconnect, like in Leocal, where we talked about using physical force, and we said, can't mean negligent force, it has to be an intentional force. Similarly, it seems nonsensical to think that manufacturing, what are the words the California State, manufacturing or delivering, or possessing with intent to sell, manufacture, or deliver, can't have some knowledge requirement, because it ends with a controlled substance. So how can you manufacture a controlled substance if you don't know it's a controlled substance? It seems like a non-sequitur. So a few different points on that. First, Florida law does require that you know the substance is present, so it wouldn't be implicated here. If you're a delivery person who's carrying an opaque sealed box and you don't know that there's cocaine inside, I don't think you could be prosecuted under Florida law, because you must know of the presence of the thing, regardless of whether you know its character. So that's not implicated under Florida's law, but you think so? Sotomayor, I don't know why, because under your, it says, any person who sells, manufactures, or delivers, or possesses with intent to sell, manufacture, or deliver. So whether the box is opaque or not, under the theory as your briefs gave it to me, if it's a controlled substance in the box, you intend to possess it. So I think there's an important twist in Federal, in Florida law here that explains where, how that State would address this circumstance. Until 2002, the State courts had interpreted the statute to require knowledge of the illicit nature. The legislature overturned that and said knowledge of the illicit nature is not an element. It is instead an affirmative defense. But that did not wipe out the preexisting requirement that you must know of the presence of the substance. And the State supreme court confirmed that in an opinion in 2014 called Inree Standard Jury Instructions in Criminal Cases. This is 153, Southern 3rd, 192, where they reject a change that would have suggested uncertainty about who needs to prove presence of the substance or knowledge of the presence of the substance, because it points back to the case we cite, Atkins, saying, look, Florida law is already clear on this. So all of that is about the court. If we had a Federal statute, not a recidivist statute, but a straight up Federal statute that said it's unlawful to manufacture, distribute, or possess with intent to manufacture or distribute a controlled substance, it is 100 percent or close to it that we would require mens rea and knowledge of the substance. Don't you agree with that? So we agree that ordinarily you would read in a, you would presume a mens rea requirement, exactly how that would apply across the different elements. So if you agree, if this were a straight up Federal statute that mens rea would be read in, why not read it in to a recidivist statute? For some of the reasons that came up in the colloquy earlier, that in a recidivist statute there's no concern about fair notice of what you were already convicted of. And in addition, Congress isn't using the mens rea for a particular offense as the substantive threshold for how serious something is. Congress took a different approach that sidestepped all the variation in uncertainty in State law by covering a broad range of drug trafficking conduct, but only if the crime carries at least a 10-year maximum sentence. That's 10 times the threshold in the violent felonies provision in subparagraph B. It's also the same threshold used in the Federal provision, A.1., that refers to any crime under the Controlled Substances Act, the Controlled Substances Import-Export Act, and a particular maritime statute. So Congress is covering a broad range of conduct, but using the punishment as a proxy for the seriousness of the offense. I think that fits together with the idea that Congress isn't asking courts to read in a mens rea into State statutes that might have predated ACCA and determine whether they correspond in a particular respect to an element Congress didn't mention. Instead, Congress cast this wide net with respect to conduct, but used the penalty as the filter to screen out lower-level offenses. But as Justice Ginsburg said and counsel said, the penalty might not be that much of a filter, given the severe penalties attached to certain seemingly low-level offenses. And you – can you respond to that again? Sure. It's entirely possible that States would impose serious sentences for those kinds of things. We're not aware of a large number of them. They – it did exist in 1986 that not every State required mens rea. So then if that – sorry to interrupt. If that's true, that's not much of a filter, then. I think it is a filter and would have been viewed by Congress as a meaningful filter in the vast majority of cases. We're not aware of any other State that imposes this kind of penalty for this category of offense, where it's an affirmative defense that you don't have knowledge rather than an affirmative element. And I think the point is Congress, looking across the landscape of state laws in 1986, wouldn't have viewed this in a recidivist statute as being a serious problem. I think the concern that Congress had in 1986 was, look, there are a variety of State laws that involve drug trafficking. There's – it's clear from the text of the legislative history that Congress was trying to include those laws. But rather than get caught up on exactly how each State defined it and exactly how they parsed the mens rea requirement, how they grouped particular offenses, which also differed, and whether they used particular enhancements to get to the 10-year threshold, Congress just took a simpler approach, saying if it involves drug trafficking conduct and it involves a – or it carries a maximum sentence of at least 10 years, then we are concerned that your subsequent possession of a firearm unlawfully presents a sufficient risk that we need to impose a greater sentence. So I think that's what was driving it. Roberts. Mr. Bond, I had two questions. Feel free to tackle them in any particular order you wish. First, what is your understanding of how the affirmative defense works under Florida law? There was some confusion about that in our earlier discussion as to who bears the burden at the end of the day. I'd be curious to know the government's position on that, number one. And number two, related to what Justice Sotomayor was asking you, forget about Florida law for a moment. The word involves, I think we both agree, is a pretty broad word, right? Everything in the world pretty much involves everything else in some level of connection. And what do we do about the fact that this statute would at least possibly capture a State law that had a draconian penalty for delivering a drug without knowing what it is? I mean, involves would seem to capture that. Your colleague on the other side says there's a vagueness concern here that you're ultimately inviting a constitutional challenge on. So those two questions. So if I can take them in order, our understanding of Florida law is that when the affirmative defense is invoked, the burden remains on the defendant at that point to demonstrate that he did not have knowledge of the illicit nature. And a defendant who possesses the substance, when that happens under 893.101c, a permissive presumption is available that can be drawn by the jury, can be inferred by the jury that the person actually knew of what it was they were then manufacturing and distributing if they had possession of it. So that's our understanding of Florida law. I don't think anything turns on that here, but that's how we understand it. How do you draw the line he's referring to? I mean, suppose the state legalizes marijuana, but it has a criminal provision which says anyone who sells marijuana at a price that is higher than X, you say, is committing a serious or lower than Y, is committing a serious offense, et cetera. Okay? Now, is it picking up like economic control statutes if they're, you know, if they're criminalized, like the antitrust laws or something? So I don't think that it involves it. I mean, I think you have to look to the elements of the offense as under the categorical approach generally. So unless the statute that you're describing were divisible into a drug sale. Yeah, it is. So what do you want me to say? I'll agree to everything. If the statute is divisible and has one element, one alternative element that involves the sale of drugs and one that does not involve the sale of drugs, then it's picked up. It says marijuana. It's a controlled substance. It says it's legal in this State. I'd just be repeating myself. And all that they're forbidding, though, is something to do with price. Yes. And a number of States do impose an aggravating circumstance. Ten years, and that's if you did that, then this statute kicks in, even though what he really did was make a price agreement, or he didn't get the right license, et cetera. Yes, I think that's correct, that that would fall under the Federal definition. Then there's another way of doing it. He says you don't have to go that broad at all. He says let's look at the real elements of the very comparable crime, which is the crime of possessing a controlled substance with intent to distribute it, a well-known crime. And he says, look at those elements. And by the way, those elements everywhere but Florida require the prosecution to come in. You've heard the argument. And to show that he knew that this powder was heroin. So a few points. A State crime for possession with intent to distribute would be picked up under the plain language of the statute. And the fact that States might or might not require additional elements doesn't change the meaning of the words or what Congress was trying to capture. No, no, but that's general. What I'm trying to do is to go back to the question I think Justice Gorsuch was asking and say once we get in a definition of the word involved, which is broader than the elements of the State traditional crime, which every State has but one, we've opened the door to all kinds of things, such as economic crimes, which do involve but don't seem to be what Congress is interested in. So if I can take on involves directly. First, I don't think it's that complicated of an inquiry, just as this Court explained in Kawashima, where it said the involving clause was clear. We look to the elements. If they necessarily entail this conduct, game over. It's a straightforward inquiry, at least in the mine run of cases. Now, we understand there to be daylight between the involves clause and an elements clause or something along those lines because it would pick up solicitation or financing offenses, for example, California's law, section 11353, that makes it a crime if you hire a miner to engage in selling a particular drug. Whether or not the State has to prove that the drugs were sold by the miner, you have to be engaged in conduct that involves distribution. Indeed, that's the whole point of the conduct. But at the end of the day, whatever you think about the meaning of the word involves, it's a problem for Petitioner as much as it is for us. He agrees at reply brief page 7 with our interpretation of it, and whatever he thinks about the word, you still have to address its meaning on either theory. The Petitioner's principle submission is about the meaning of manufacturing, distributing, and possessing. Those words all follow involves. So on both sides' theories, you still have to figure out what involves. I understand there's tricky sides, tricky questions for the Petitioner. I think we're trying to address one that's tricky for you. And that is, if involves is capacious as you suggest, state law with draconian penalties for anybody who unwittingly provides substances that are used in the manufacturing of drugs or the delivery of illicit drugs with no mens rea. Just because we hate drug crimes and recidivists and those sorts of policy considerations. How far out does involve go? Somebody who finances people who deliver drugs unwittingly. I thought they were investing in a legitimate business, but it turns out that they're mules for a drug manufacturer. I mean, this thing could trace out quite dramatically at either end of the spectrum before and after the actual crime, quite far. That's my concern. So I think the concern would be addressed because it would only pick up state offenses whose elements as a categorical matter involved. Sure, no, no, the state offense is going to say anybody who finances anybody else who delivers a drug, an illicit drug, okay? So there's manufacturing distribution right there in the statute. But the defendant's involvement is maybe three or four steps removed in either direction antecedent or after the fact. What do we do about that? So I think the answer under the existing law is that if the state has imposed a ten year or more sentence and the defendant has three or more convictions under that statute, yes, it can be an act of predicate. Congress used the substantive threshold of the penalty rather than trying to target a specific conduct and to parse out exactly what mens rea was necessary. Well, any, who knows what California will pass as a law, but they have marijuana shops. Anyone who invests in a marijuana shop, anyone, that could be at one share, and the marijuana shop turns out to sell some cocaine on the side, ten years. Now they could, and that's a kind of far out example. And what we're trying to do is, since you've challenged everyone here to use their imaginations, is to suggest, well, he's saying the safer thing. Is to not give a special meaning to involve, but just look at what has been the traditional meaning of distribution with intent to distribute, of manufacture with intent to distribute, of selling, et cetera, in that tradition. Then he has to face the hurdle, has he really departed enough from the traditional meaning when you have this burden shift? So a couple of points. Ours is on the first part. Yeah, and just to put a friendly amendment to that, I don't mean to prolong it, but involve has to end somewhere along the chain, right? At some point you're going to say it no longer involves, I would think, a drug crime. Where is that? Is it enough for the state? If the state just simply says, some attachment to a drug, five layers removed and a drug crime was involved, is that enough? Or does the government have some position on whether that might not be enough at some point in the causal chain? It might not be enough at some point in the causal chain if you can't say with confidence that the elements necessarily entail this particular result. That will depend on the state. I'm sorry, go ahead. It depends on the particular crime at issue. And so there are, for example, state crimes where a trafficking statute, where the highest level of the statute of the trafficking regime says that if you possess a certain large quantity of drugs, we're going to infer, we're going to conclusively presume an intent to distribute based on the quantity there. That involves possession with intent to distribute, because state law presumes that you have that particular intent. So I think there are plenty of things that fall within involves that don't push that outer limit. Now, I take the point about the concern. Sotomayor, stop right there. Right there, what's the amount? Meaning, let's assume that a State says you possess any amount of cocaine, we presume you intend to distribute. Is that, does that involve a crime? What's the generic meaning? The State offenses that we're aware of have used a 28-gram threshold, and the Eleventh Circuit held that possession of that amount, which is a pretty common threshold, is sufficient to trigger a conviction. But the Fourth didn't, because the Fourth basically said what involves has to involve possession with intent to distribute. That's right. And you can't read a presumption into an intent with that. So, but you are. How about if they lower it to 4 grams? I think 4 grams is well within what most people possess with use, personal use. But I think at that point it would be much more difficult to say that a State law is presuming intent based on that possession. So why don't we read it literally? It has to involve the possession with intent to distribute, not a presumption of intent to distribute. Sure. And at the end of the day, nothing in this case turns on exactly what you think the element and involves. If you conclude that those are ultimately synonyms, I don't think much would ultimately change. We do think that Congress intended there to be some delta to pick up statutes that reach slightly beyond an element of possession or, sorry, an element of manufacturing and distributing to other crimes like solicitation and financing. But if at the end of the day you're worried about the fact that you've, on that delta, you said the Eleventh Circuit is right, right only because the State has used the label. I don't think it's because the State has used the label. The Eleventh Circuit pointed out that in the context of that particular scheme, it was quite implausible that the State legislature, I think it was Alabama, intended that the highest level of its scheme not to become an ACCA predicate and not to involve conduct that would give rise to this kind of inference, even though lower level offenses did. It's a context-specific thing. And we're not suggesting that this case turns on exactly where you draw the line, whether where the Eleventh Circuit drew it or where the Fourth Circuit drew it with respect to that 28-gram package. Alitoson What does this have to do with the question in this case? It totally – it's a totally different question. The quantity of drugs from which you can infer that there was an intent to distribute? What does that have to do with anything in this case? So we agree that the question here is much more straightforward and doesn't turn on exactly what you conclude involves means, whether you think that a particular quantity can be used as the basis to infer that possession with intent to distribute will necessarily be entailed by the conduct or not. The question here is simply – Alitoson Now, you can intent – you can be convicted, am I wrong, of possession with intent to distribute even a very small amount of drugs if there's proof that you intended to distribute it. Alitoson Certainly, that's right. Alitoson So that's a separate question of when you can – when you can infer from the quantity of drugs that there was an intent to distribute. You could have a State, if we want to hypothesize draconian State law, that says if you intend to distribute one gram, that is – that is a felony, punishable by 50 years in jail. That would raise potentially other questions, but it has nothing to do with the issue here. That's exactly right, Your Honor. I don't think anything turns on exactly how far you construe that provision to extend. And if at the end of the day – Alitoson So to be clear, just to be very clear, if you win here, to Justice Alito's question, the question of where to draw the line on State possession statutes would remain open for litigation in future cases, correct? Alitoson So you will still have the question of what particular crimes necessarily entail distribution, manufacturing, or possession with intent to distribute. But that litigation and that kind of uncertainty is dwarfed by the litigation that Petitioner's theory is presenting, which would require you not just to figure out what that specific thing means, but the elements of the complete offense or of each of these three offenses in 1986. Roberts And you're also – I'm sorry. I was just going to say you emphasized in your brief the difficulty of, I'll just quote, Attempting to synthesize generic versions of these offenses from the motley raw material of State and Federal laws. Your office will keep that in mind the next time you urge us to adopt a generic approach? Alitoson I think there's a – there's a material difference between State drug trafficking laws in 1986 that I think Petitioner acknowledges, and the offenses that Congress recognized were sufficiently well-defined in 1986 that it could refer to them by name and understand that – and courts would understand what Congress was referring to, particularly the offenses that previously had already been defined in the ACCA before the 1986 amendments, like burglary and robbery, which is no longer defined. Roberts I wonder whether you'll also keep in mind this question about involves – you know, the use and carry provision of 924 has kept courts awfully busy, right? What is a use? Are we going to – you know, what's our assurance we're not going to have similar amounts of concern and litigation about what's an involving? Alitoson So again, both sides have the same problem with respect to the word involving, and the ordinary meaning of it, as the Court explained in Kawashima, is relatively straightforward. And again, you look at the ordinary meaning of these words, the same as you did in Boisil, to look at use of force, that connotes a certain amount of volitional conduct. It doesn't necessarily mean knowing or – Breyer The government has told us involved bartering, it involves – it's in the home, it's somewhere in the house, it's in the neighborhood, that's the use of a gun. Why aren't we going to be going down that road here? Alitoson I don't think that the language compels you to go down that road. It simply tells you to look to the elements of the offense and determine whether they necessarily entail this conduct. And in this case, there's no reason to go beyond determining – Sotomayor Mr. Bond, Florida is the only State that takes out mens rea. Forty-nine other States don't. And I don't actually know why it's – why there would have been a fear of what other States were doing, since most of them were adopting the uniform definition of manufacturing, sale, and production – and distribution. Yes, there might be production uses, but I'm not quite sure what the worry on your part is. Well, so I think – if I can challenge the premise about what was clear in 1986, as Petitioner acknowledges, the North Dakota Supreme Court had directly rejected this mens rea requirement. I don't think it was clear in a number of the other two-thirds of the States whose statutes did not expressly require mens rea. Petitioner cites cases that come long after 1986 or address different enhanced statutes. Sotomayor But right now, 49 other States include it. Alitoson We're not aware of any other State besides Florida that has emphatically rejected this knowledge requirement as Florida. Sotomayor Either as expressed or implied, correct? Alitoson We're not aware of a State that falls in that category. I'm not certain that it's clear in every State to the extent that Petitioner is describing. But – Kennedy The point of the statute is to tell people who have these prior convictions not to possess firearms. Alitoson Exactly. The point of this enhancement provision is those who have three or more – Kennedy And there are a lot of people in Florida with – or who have prior Florida offenses who Congress didn't want to possess firearms. Alitoson That's exactly right. And so the idea that we would read into mens rea for these already completed crimes is just detached from Congress's purpose here, which is to impose a sufficiently serious sanction on those who, in Congress's judgment, pose an increased risk when they possess firearms because of their history of repeatedly engaging in drug trafficking crimes or violent felonies that carry significant penalties, and for the case of drug trafficking crimes, a 10-year maximum sentence or more. If there are no further questions. Roberts Thank you, counsel. Mr. Summa, five minutes. Mr. Summa The purpose of the statute is not exactly to tell people who have prior convictions not to possess firearms. The purpose of the statute is to identify those people, those felons who possess firearms, but who would also deliberately use those firearms to harm other people. As the Court stated in Begay, identify the people who are likely to point the weapon and fire the weapon. When you have a statute that criminalizes the truck driver who doesn't even know what the substance is, that person is less culpable. That person does not have the motive or the intent to defend this unknown substance by violent action or by use of a gun. So to the extent that the Court is concerned about the scope and the effect of the term involving, I think this Court should be guided by the interpretation of the RICO statute in the Scheidler case. There, the statute prescribed acts or threats involving, followed by a list of crimes such as murder, kidnapping, arson, and extortion, and in that context, the Court said the term extortion must be regarded in its generic sense. And to the extent that there's still any lingering ambiguity about the scope of the term involving, the legislative history that we cited in our initial briefs shows the intent of Congress. When Congress drafted the State offense provision, the history shows that Congress intended to add offenses, not conduct, not activities, but add offenses described generally, which translates to the generic sense. And I would also point to this Court's Moncrief decision. When the Court was confronted with language such as illicit trafficking in a controlled substance, the Court said illicit trafficking in a controlled substance is a generic crime. Compare that to what we have here, phrases such as manufacture of a controlled substance and distribution of a controlled substance. These phrases even more specifically describe generic crimes. There, Congress uses models to identify predicate crimes. What we're asking the Court in this case to do is no more and no less than the Court did in the Esquivel-Quintana case. When the predicate crime was described as sexual abuse of the minor, and that crime may not be clearly defined, the model says, look to a related Federal statute. Now, if the Court still thinks there's ambiguity about what manufacturing of a controlled substance means or distribution of a controlled substance means, begin by looking to the related statute for how it defines the crimes. The related statute here is, of course, the Federal drug trafficking provision, which describes the crimes to include a mens rea element. And the Court said in Esquivel-Quintana, then look to the survey of State law to see how the States define the crimes, and all those factors contribute to the finding of the definition of what constitutes the generic Federal crime. If Congress had before it, when it drafted this provision of ACCA, these two models, the Federal model where the prosecution has to prove that guilty knowledge of the nature of the substance, and the Florida model, which differs only in that the defendant has to raise this as an affirmative defense, has to say, I didn't know that it was an illegal substance, Congress would think that there's enough difference between those two models to say only the former is included and not the latter. I think Congress — yes, Congress would have decided the law is so overwhelmingly of — in favor of mens rea element, that's what we generally would contemplate. Is there any practical difference between those two? I mean, I don't see it. I don't think very many people are going to get acquitted under the Federal law unless they're willing to stand up and say, I didn't know this was cocaine, in which case the two things are exactly the same. Well, Your Honor, I respectfully say that you're giving short shrift to the general requirement — my time's up, ma'am — you're giving general short shrift to the significance of jury findings. If a jury does not find, as it does in the Florida law, that the defendant has engaged in blameworthy conduct, the court, and a Federal court in a sentencing proceeding, should assume that the defendant did not have that guilty knowledge, because the Federal sentencing court cannot make that finding for the first time in a collateral sentencing proceeding. I thank you very much. Thank you, counsel. The case is submitted.